IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TIFFANY BASS and PAULA WIGGINS, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:20-CV-916 |
| WEINSTEIN MANAGEMENT CO., INC. and WMCi CHARLOTTE XIII, LLC d/b/a BEXLEY VILLAGE AT CONCORD MILLS, | ) ) ) ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Catherine C. Eagles, District Judge.

By statute, North Carolina regulates the fees and expenses a landlord can charge a residential tenant who falls behind on rent, allowing some and prohibiting others. This case concerns whether tenants can recover damages from landlords who charged them eviction-related expenses that at the time were not authorized by statute when the General Assembly thereafter amended the statute to authorize landlords to charge those expenses and explicitly made the amendments retroactive. The defendants' motion for judgment on the pleadings will be granted.

## 1. BACKGROUND AND FACTS

The expenses at issue here are the filing fee a landlord must pay the court to initiate a summary ejectment proceeding, the fee the landlord must pay the sheriff to serve the summary ejectment complaint on the tenant, and the attorney's fee the landlord

1

pays to counsel it retains to handle the summary ejectment proceeding. The Court will refer to the filing fee and service fee as "summary ejectment expenses" and the attorney's fee as such.

According to the complaint, on June 13, 2018, the defendants here assessed summary ejectment expenses and attorney's fees against the plaintiffs, who had fallen behind on their rent. Doc. 18 at ¶ 51; Doc. 18-7 at 2. Though this was allowed under the lease, Doc. 48-2 at 3, the statute did not authorize landlords to impose the summary ejectment expenses. *See, e.g., Suarez v. Camden Prop. Tr.*, 818 F. App'x 204, 211–12 (4th Cir. 2020) (persuasively finding that under the pre-2018 amendment version of § 42-46, the landlord "was not authorized to charge" the tenant the filing fee or the service fee, and that a reasonable attorney's fee could be assessed only if authorized by a separate provision of North Carolina law, such as N.C. Gen. Stat. § 6-21.2).[1]

The next day, the General Assembly passed a law amending § 42-46, effective June 25, 2018, to add a subsection explicitly authorizing landlords to charge tenants for summary ejectment expenses and a reasonable attorney's fee. N.C. Gen. Stat. § 42-46(i) (2018).[2] But these changes were not retroactive. *See, e.g., Suarez.*, 818 F. App'x at 210.

---

[1] *Suarez* is an unpublished opinion and thus not binding precedent, but its reasoning is persuasive.

[2] The bill added subsection (i), entitled "Out-of-Pocket Expenses," which provided:

> [i]n addition to the late fees . . . and the administrative fees . . . , a landlord is also permitted to charge and recover from a tenant the following actual out-of-pocket expenses:
>
> (1) Filing fees charged by the court.

2

In 2021, several months after this lawsuit was filed in 2020, the legislature again amended § 42-46. In this amendment, the General Assembly added language characterizing the authorized eviction expenses and attorney's fee as "administrative fees" and stating explicitly that "[t]his Part is effective when it becomes law and is intended to apply retroactively to all pending controversies as of that date." Doc. 48-1 at 3–4; 2021 N.C. Sess. Laws 2021-71 (S.B. 644) § 1.2.

## 2. DISCUSSION

At the time they charged the plaintiffs for eviction fees, the defendants did not have statutory authority to do so under the then-applicable version of § 42-46. The question is whether the General Assembly's action in 2021 did away with the plaintiffs' causes of action. The plaintiffs say that retroactive application of the 2018 and 2021 amendments to their claims would interfere with their vested rights and would be unconstitutional. The defendants say that the legislature can take away a statutory cause of action any time before final judgment.[3]

---

(2) Costs for service of process pursuant to G.S. 1A-1, Rule 4 of the North Carolina Rules of Civil Procedure and G.S. 42-29.

(3) Reasonable attorneys' fees actually incurred, pursuant to a written lease, not to exceed fifteen percent (15%) of the amount owed by the tenant, or fifteen percent (15%) of the monthly rent stated in the lease if the eviction is based on a default other than the nonpayment of rent.

[3] The plaintiffs have two pending claims: one for assessing fees in violation of § 42-46, Doc. 18 at ¶¶ 79–84, and another for violation of the North Carolina Debt Collection Act. Doc. 18 ¶¶ 85–104. The Debt Collection Act claim is based on the statutory violation of § 42-46, and the parties have not distinguished between these two claims for purposes of the pending motion.

3

In *Dyer v. Ellington*, the plaintiff sued the town commissioners for failing to publicly disclose the amount of taxes collected and spent during the year, as required by statute. 126 N.C. 941, 36 S.E. 177 (1900). The plaintiff sued to recover a penalty from the commissioners for this failure, as authorized in the statute. While the case was pending, the legislature passed a law releasing the commissioners from any penalties for not complying with the statute. The North Carolina Supreme Court held that the plaintiff's cause of action was "destroyed" before he obtained a vested right and that the case should be dismissed. *Id*. at 941, 36 S.E. at 178; *accord In re Incorporation of Indian Hills, Jackson Cnty.*, 280 N.C. 659, 663, 186 S.E.2d 909, 911 (1972) ("[I]f a statute is unconditionally repealed without a saving clause in favor of pending suits, all pending proceedings thereunder are terminated, and if final relief has not been granted before the repeal goes into effect, it may not afterwards.").

This case is the same. Just as in *Dyer*, the cause of action was created by statute and the remedy was created by statute. Just as in *Dyer*, the plaintiffs filed suit before the statute was amended but had not obtained a judgment. On these facts, *Dyer* controls and the plaintiffs' claims must be dismissed.

The plaintiffs rely on *Osborn v. Leach,* 135 N.C. 628, 47 S.E. 811 (1904), and its progeny. As explained in a later Supreme Court case:

> In *Osborn v. Leach,* 135 N.C. 628, 47 S.E. 811 (1904), the question was whether our "London Libel Law," now codified as General Statutes 99–1 and 99–2, violated the "open courts" provision of our Constitution. G.S. 99–1 to –2 (1979). This law abolished the right of a libeled plaintiff to recover punitive damages from "a newspaper or periodical" if these entities published a timely retraction and if the libel was published in good faith. The Court in *Osborn* concluded that the legislature could constitutionally abolish

4

> the common law right to recover punitive damages under these circumstances. The court stressed, however, the proposition that the statute still permitted the recovery of "actual damages." It interpreted these damages to be all ordinary, compensatory damages, including actual pecuniary loss, damages for pain, mental suffering, inconvenience, and for injury to reputation. The Court, in dictum, stated that had the legislation abolished plaintiff's right to recover these kinds of compensatory damages it would have considered the act in violation of the "open courts" provision. *Id.* at 639–40, 47 S.E. at 815.

*Lamb v. Wedgewood S. Corp.*, 308 N.C. 419, 443, 302 S.E.2d 868, 882 (1983).[4] Since *Osborn*, the Supreme Court has twice acknowledged that the statement about the unconstitutionality of abolishing a plaintiff's right to recover compensatory damages was dicta, *id.; Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 604, 853 S.E.2d 698, 731 (2021), and in any event, this case concerns statutory rights, not common law rights.

The plaintiffs also contend that their rights in their cause of action were vested. It is undisputed that no matter how clear the legislature's intent as to retroactivity, a statute cannot be given retroactive application if to do so would violate constitutional rights. *See e.g.*, *Fogleman v. D & J Equip. Rental, Inc.*, 111 N.C. App. 228, 233, 431 S.E.2d 849, 852 (1993) (refusing retroactive application of an amended statute where it "deprived appellants of vested rights and, thus, was unconstitutionally retroactive"). "'Vested'

---

[4] The Court in *Lamb*, which upheld a six-year statute of repose as constitutional, said that "we do not have to decide whether the legislature could constitutionally abolish all tort claims against builders and designers arising out of improvements they built or designed. We refrain from holding. . . that the legislature may constitutionally abolish altogether a common law cause of action. Neither do we mean to say that it cannot. The question is not before us." *Id.* at 443–44, 302 S.E.2d at 882.

5

rights may not be retroactively impaired by statute." *Gardner v. Gardner*, 300 N.C. 715, 719, 268 S.E.2d 468, 471 (1980). But that exception does not apply here.

Unless judgment has already been entered, *see, e.g., Dunham v. Anders*, 128 NC 207, 38 S.E. 832 (1901), "generally speaking, a right created solely by the statute may be taken away by its repeal or by new legislation." *Pinkham v. Unborn Child. of Jather Pinkham*, 227 N.C. 72, 78, 40 S.E.2d 690, 694 (1946). As the court in *Pinkham* acknowledged, there is an exception if the statutory rights may "be regarded as contractual." *Id*. But here the contract itself authorized the landlord to collect the eviction expenses and attorney's fees, so the contract is consistent with the 2021 amendment.

The Court appreciates the policy reasons leading courts to apply a presumption against retroactive application of legislation. *See, e.g.*, *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 955, 958 (4th Cir. 2020); *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 176 (4th Cir. 2010). They are sound. But there is no absolute prohibition on retroactivity, and, as the court in *McKiver* recognized, statutes must be given retroactive construction when "the words used are so clear, strong and imperative that no other meaning can be annexed to them." *McKiver*, 980 F.3d at 955 (cleaned up). That is the case here.

The defendants' motion for judgment on the pleadings will be granted.

It is **ORDERED** that:

1. The defendants' motion for judgment on the pleadings, Doc. 47, is **GRANTED**.

6

2. The defendants' motion to stay proceedings, Doc. 49, and the plaintiffs' motion to compel, Doc. 44, are **DENIED** as moot.

3. Judgment will be entered separately.

This the 8th day of September, 2021.

_____
UNITED STATES DISTRICT JUDGE